UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| EUGENA ANN WATSON, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:16cv433 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     Defendant. | ) | |

OPINION AND ORDER

    This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §1383. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

    The law provides that an applicant for SSI must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, supra at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.

| | | |
|---|---|---|
| 2. | The claimant has not engaged in substantial gainful activity since January 11, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*). |
| 3. | The claimant has the following severe impairments: depression, anxiety, bipolar disorder, and mood disorder (20 CFR 404.1520(c) and 416.920(c)). |
| 4. | The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). |
| 5. | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of work at all exertional levels, but she can never climb ladders, ropes or scaffolds, or work at unprotected heights, or around moving mechanical parts. She is limited to simple, routine and repetitive tasks, in a non-fast paced work environment, not at a production rate pace (no assembly line work, for example); she is limited to being responsible for simple, work-related decisions; and she can respond appropriately to frequent interaction with supervisors, coworkers, and the general public; and she is limited to tolerating few changes in the routine work setting, which is defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained. |
| 6. | The claimant is capable of performing past relevant work as a Cashier II (*Dictionary of Occupational Titles* (DOT) Code 211.462-010). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965). |
| 7. | The claimant has not been under a disability, as defined in the Social Security Act, from January 11, 2014, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)). |

(Tr. 23- 37).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on June 23, 2017. On September 26, 2017, the defendant

filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

Plaintiff filed her application for disability benefits in March 2014, alleging disability beginning January 11, 2014 (Tr. 283-89). Plaintiff's applications were denied initially and upon reconsideration, and Plaintiff requested a hearing in front of an ALJ)(Tr. 152-83). On September 29, 2015, the ALJ held a hearing at which Plaintiff, represented by an attorney, and a vocational expert testified (Tr. 44-97). On November 10, 2015, the ALJ issued an unfavorable decision finding Plaintiff was not disabled because she could perform her past relevant work (Tr. 21-37).

On October 21, 2016, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (Tr. 1-7).

Plaintiff reported that she has had a lifelong learning disability. She also reports a turbulent childhood, and an abusive marriage. She states that she has multiple mental disorders, including depression, anxiety, panic attacks, suicidal thoughts, as well as anger management issues.

Plaintiff sets forth the following medical history. In March 2012, a Nurse Practitioner suggested that Plaintiff pursue counseling, but Plaintiff did not want to talk to a stranger about her problems. In March 2013, Plaintiff presented to her treating physician, Mark O'Brien, M.D., with anxiety, feelings of stress, sleep disturbance, and weight gain, also discussing possible future pregnancy. Plaintiff was already on Cymbalta and Ambien, and Dr. O'Brien added Seroquel. In May 2013, Plaintiff presented to Dr. O'Brien reporting doing much better with more energy at work. He refilled her Seroquel and Cymbalta prescriptions. In December 2013, Dr. O'Brien diagnosed generalized anxiety. Plaintiff apparently presented with near-constant anxiety symptoms but did not see them as "true panic attacks" at this point, even though apparently triggered by almost anything. She had been taking the anti-psychotic Seroquel, but not the nerve pain medication and antidepressant Cymbalta because of cost. The report of symptoms indicated negative for depression, personality change, and mood swings; the exam section indicated nothing about psychological symptoms. In addition to Seroquel refill, O'Brien prescribed the SNRI antidepressant Effexor and the sedative Xanax.

The Social Security Administration sent Dr. O'Brien a form asking him to check off his psychological assessment of Plaintiff. On April 1, 2014, he checked no limitation ("none") in

every single box and indicated further that Plaintiff could manage benefits in her own best interests. Per this questionnaire as completed, Plaintiff can, "Understand and remember detailed instructions," and "Carry out detailed instruction." Per the form as filled out, Plaintiff has no issues at all interacting appropriately with co-workers, supervisors, or the general public. Likewise, the form indicates no challenges whatsoever for her in terms of responding appropriately to work setting changes. Plaintiff points out that Dr. O'Brien lists no medical/clinical findings to support the checked-off assessment even though that information is specifically requested by the form.

In April 2014, Plaintiff was still being prescribed the SNRI antidepressant Effexor, but in the extended-release version. Plaintiff was also receiving Seroquel from a free clinic.

In support of remand or reversal, Plaintiff first argues that the ALJ improperly gave great weight to the opinion of her treating physician, Dr. O'Brien. On April 1, 2014, Dr. O'Brien completed a medical source statement of Plaintiff's mental abilities (Tr. 547-49). He indicated that Plaintiff had no impairment in her ability to understand, remember and carry out instructions; and no impairment in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting (Tr. 547-49).

The regulations specify, and the Seventh Circuit has recognized, that it is the ALJ's role to weigh the medical opinions regarding a claimant's functioning. 20 C.F.R. § 404.1527; *Wolfe v. Shalala*, 997 F.2d 321, 325-326 (7th Cir. 1993). An ALJ accords a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2).

Plaintiff argues that Dr. O'Brien was not a treating physician at the time he completed the April 2014 medical opinion, yet she admits that Dr. O'Brien was her primary care physician  The record shows that Plaintiff treated with Dr. O'Brien from March 2013 through August 2015 (Tr. 421-53, 617-24, 643-50). Dr. O'Brien treated Plaintiff at least four times prior to completing his opinion (Tr. 425, 427, 429, 433, 623, 649). Dr. O'Brien was also a physician at the Dekalb medical group and would have had a longitudinal perspective from Plaintiff's treatment records from at least 2010 (Tr. 421-53).  As the ALJ provided adequate reasoning for the weight he gave Dr. O'Brien's opinion (Tr. 32), there is no need for remand on this point.

Next, Plaintiff argues that the ALJ's discussion of her running out of her medications was erroneous (Tr. 29). Plaintiff contends that she could not afford the medicine. However, as the Commissioner points out, the basis for the ALJ's discussion of Plaintiff's medications was to highlight that she had a positive response to medications and her symptoms improved, but when she was not taking her medication she experienced increased symptoms (Tr. 29).

Plaintiff also argues that the ALJ mis-characterized the evidence from Teymour Sepahbodi, M.D., a treating psychiatrist. However, the record is clear that the ALJ properly summarized the evidence from Dr. Sepahbodi and noted that Dr. Sepahbodi reported that Plaintiff had no hallucinations, delusions, confusion, compulsive behaviors, excessive anger, inattentiveness, or suicidal ideations; her insight and judgment were intact; and she did not require inpatient hospitalization (Tr. 30, 568-85, 625-42). Notably, Dr. Sepahbodi continued Plaintiff on her regular psychotropic medication and recommended only routine follow-up treatment (Tr. 30, 568-85, 625-42). The ALJ noted that Plaintiff continued to complain of

increased anxiety (Tr. 30). However, despite her complaints, she had normal mental status findings such as normal orientation, normal communication skills, intact memory, normal attention and concentration, and a normal fund of knowledge (Tr. 30, 568-85).

Plaintiff next argues that psychiatrist Antonia Recinto, M.D., was not properly mentioned in the ALJ decision. However, the ALJ clearly mentioned Dr. Recinto's treatment and opinion (Tr. 30-31). Dr. Recinto, who worked at Northeastern Center, assessed Plaintiff with a Global Assessment of Functioning (GAF) score of 45, indicating serious symptoms or serious impairment in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev 2000). (DSM-IV-TR). It was within the ALJ's discretion to give this assessment limited weight because GAF scores have no direct correlation to the severity requirements of mental disorders listings. 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000).

As the Seventh Circuit explained in *Denton v. Astrue*, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." 596 F.3d 419, 425 (7th Cir. 2010) (citing *Wilkins v. Barnhart*, 69 F. App'x 775, 780 (7th Cir. 2003)). The ALJ properly noted that a low GAF score would not preclude a claimant from having the mental capacity to hold at least some jobs in the national economy (Tr. 31). *See Wilkins*, 69 F. App'x at 780 (GAF score of 40 did not render finding of non-disability unsupported)). This court holds that the ALJ gave adequate reasons for discounting Dr. Recinto's GAF score (Tr. 31).

Plaintiff further argues that the ALJ improperly rejected the opinion of Dan Boen, Ph.D., the psychological consultative examiner. Clearly, however, the ALJ gave adequate reasons for

8

discounting Dr. Boen's opinion: his opinion was inconsistent with his own findings that indicate Plaintiff was cooperative with the examiner and appeared to have only moderate limitations in concentration; his opinion was inconsistent with findings that Plaintiff had only mild limitations in immediate recall and long-term recall, and only moderate limitations in short-term memory; and his opinion was inconsistent with treating physician Dr. O'Brien's opinion (Tr. 33). Contrary to Plaintiff's assertions, the ALJ may choose to credit a treating physician opinion over a consultative examiner. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision.").

The ALJ may also properly consider and give more weight to the state agency opinions. (Tr. 33). Two state agency psychologists, B. Randal Horton, Psy.D. and Patricia Semmelman, Ph.D., reviewed the record and opined that Plaintiff could perform work despite her impairments (Tr. 98-119, 122-47). The Commissioner's regulations state that other factors brought forward by the claimant or others are to be considered when determining the weight a medical opinion should be given, including the amount of understanding a medical source has of the Commissioner's disability program and the extent to which the medical source is familiar with other evidence in a claimant's case file. *See* 20 C.F.R. § 404.1527(c)(6). The ALJ was required to consider the state agency opinions because assessments by state agency medical consultants or other program physicians are to be considered and addressed in the decision as medical opinions from non-examining sources. Social Security Ruling (SSR) 96-6p, 1996 WL 374180, *2 (July 2, 1996). The regulations also provide that state agency medical consultants are "highly qualified" and "experts" in Social Security disability evaluation. 20 C.F.R. § 404.1527(e)(2)(i) (effective August

24, 2012 to March 26, 2017). Thus, the ALJ did not err by giving more weight to these expert opinions. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("Rice complains that the ALJ impermissibly relied upon the opinions of Drs. Bilinsky and Graham, the Social Security Administration state agency doctors who determined Rice's RFC . . . The ALJ was entitled to rely upon their opinions."). The law is clear that the opinion of a state agency physician can be accepted over that of an one-time consultative physician. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (finding that the ALJ could accept the opinion of a non-examining physician over the opinion of an one-time consultative examiner); *see also Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (finding that ALJ could reject opinion of treating physician where it was contradicted by state agency physicians). Thus, in the present case, this Court holds that the ALJ reasonably discounted the unsupported and inconsistent opinion of one-time consultative examiner Dr. Boen.

Accordingly, as the decision of the ALJ is supported by substantial evidence, it must be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: November 8, 2017.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court